ATTORNEY FOR APPELLANTS
Michael J. Cork
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
William R. Groth
Geoffrey S. Lohman
Indianapolis, Indiana



FILED
Jul 16 2013, 2:52 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 49S02-1205-PL-269

COMMISSIONER OF LABOR ON THE RELATION
OF STEPHEN R. SHOFSTALL, EDWARD C.
POSEY, AND DEBORAH N. POSEY,

*Appellants (Plaintiffs below),*

v.

INTERNATIONAL UNION OF PAINTERS AND
ALLIED TRADES AFL–CIO, CLC DISTRICT
COUNCIL 91

*Appellee (Defendant below).*

———————————————————————

Appeal from the Marion Superior Court, No. 49D06-1001-PL-004271
The Honorable Thomas J. Carroll, Judge

———————————————————————

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1107-PL-620

———————————————————————

**July 16, 2013**

**Massa, Justice.**

In July 2008, Stephen Shofstall and Edward Posey lost a union election, and with it their jobs. Deborah Posey, Edward's wife, had served the Union as a clerical employee, but the new Business Manager/Secretary-Treasurer of the Union discharged her as well. All three sued the Union to recover compensation for unused accrued vacation pay, but the trial court granted

summary judgment to the Union and the plaintiffs appealed. Because Shofstall and Edward Posey held elected positions, we find they should be treated differently than Deborah Posey, and we therefore affirm in part, reverse in part, and remand.

## Facts and Procedural History

CLC District Council 91 has approximately twenty Business Representatives and clerical employees and operates in accordance with its own bylaws and the International Union of Painters and Allied Trades AFL–CIO constitution. Stephen Shofstall, Edward Posey, and Deborah Posey were employed by the Union for approximately six years. Shofstall was the Union Business Manager/Secretary-Treasurer and Mr. Posey was a Union Business Representative. In 2008, both were beaten in Union elections and lost their positions. Deborah Posey was a clerical employee and voluntary member of the Union. After Johnny Alderman defeated Shofstall in the 2008 election and assumed the position of Business Manager/Secretary-Treasurer, he terminated Deborah's employment.

After their termination, the Poseys and Shofstall requested payment for unused vacation time they alleged they had accumulated during their respective tenures. Shofstall claimed at least thirty-five days, and the Poseys each claimed fifty-five days. The Union denied their request pursuant to its Constitution and Sections 5.7 and 7.2 of its bylaws claiming it had a use-it-or-lose-it policy with regard to vacation. Shofstall and the Poseys appealed through the Union grievance process, but their interpretation of the Constitution and bylaws was rejected at all levels.

In October 2009, the Poseys filed a civil complaint in the Marion Superior Court. In January 2010, Shofstall did likewise, and the cases were consolidated. Both parties moved for summary judgment, and the trial court granted the Union's motion. On appeal, a divided panel of the Court of Appeals reversed the trial court. Commissioner of Labor ex rel. Shofstall v. Int'l Union of Painters & Allied Trades AFL-CIO, CLC Dist. Council 91, 962 N.E.2d 124, 132–33

2

(Ind. Ct. App. 2011). We granted transfer, thereby vacating the opinion below. Commissioner of Labor ex rel. Shofstall v. Int'l Union of Painters & Allied Trades AFL-CIO, CLC Dist. Council 91, 967 N.E.2d 1035 (Ind. 2012) (table); Ind. Appellate Rule 58(A).

## Standard of Review

We review a grant or denial of a motion for summary judgment de novo. Carlson v. Sweeney, Dabagia, Donoghue, Thorne, Janes & Pagos, 895 N.E.2d 1191, 1196 (Ind. 2008). Summary judgment is only appropriate when the record shows there are no genuine issues of material fact to be decided at trial and the moving party is entitled to judgment as a matter of law. Ind. Dep't of Revenue v. Miller Brewing Co., 975 N.E.2d 800, 802–03 (Ind. 2012). Like the trial court, we construe all designated evidentiary material in the light most favorable to the non-moving party. Bradshaw v. Chandler, 916 N.E.2d 163, 166 (Ind. 2009).

## I.    Rights of a Voluntary Association

It is well established that trade unions are voluntary associations, Louisville & N.R. Co. v. Miller, 219 Ind. 389, 394, 38 N.E.2d 239, 241 (1941), and this Court has long held that:

> [a] voluntary association may, without direction or interference by the courts, for its government, adopt a constitution, by-laws, rules and regulations which will control as to all questions of discipline, or internal policy and management, and its right to interpret and administer the same is as sacred as the right to make them.

State ex. rel. Givens v. Super. Ct. of Marion Cnty., 233 Ind. 235, 238, 117 N.E.2d 553, 555 (1954). Since that time, there has been little change to the general rule, and we have reiterated that rule in more recent times. "Absent fraud, other illegality, or abuse of civil or property rights having their origin elsewhere, Indiana courts will not interfere in the internal affairs of a

voluntary membership association." Ind. High Sch. Ath. Ass'n v. Reyes, 694 N.E.2d 249, 256 (Ind. 1997).

After determining the rights a union has to interpret its own governing documents, we must next determine to whom those governing documents apply. We have said "the articles of incorporation and the bylaws of a not-for-profit corporation are generally considered to be a contract between the corporation and its members and among the members themselves." Id.; see also Korzan v. Local Union 705, Intern. Broth. of Teamsters, 75 F.3d 285, 289 (7th Cir. 1996) ("A union constitution regulates the relation between the union and its members."). Our federal colleagues in the Seventh Circuit have further found that provisions of these documents that concern union governance are generally left to the union to interpret and implement as it sees fit. See Korzan, 75 F.3d at 289–90. We find this interpretation persuasive and in line with the reasoning behind our decision in Givens. How a union, or any voluntary association, chooses to compensate its elected officers and staff is certainly a matter of union governance, and as such, is generally an internal matter. Those rules and policies are promulgated by the association leadership, and under our precedent, that leadership has the authority to interpret those rules and policies.

## II.    Vacation Time for IUPAT Elected Officials and Employees

Shofstall and the Poseys argue they are employees of the Union and were promised two weeks of vacation annually. They allege this time was accrued from year to year if it went unused, and Indiana law entitles them to receive that compensation upon discharge from employment.

While employers are not legally required to compensate employees for their unused vacation time, "if vacation pay is to be compensated, it is deferred compensation in lieu of wages and is subject to the provisions of the Wage Payment Statute." Naugle v. Beech Grove City Sch., 864 N.E.2d 1058, 1067 (Ind. 2007). Although we have never addressed the issue, our

Court of Appeals has held that an agreement to provide vacation pay to employees made before the employee performs his service and based upon the length of service and time worked is not a gratuity but rather compensation for services. See Die & Mold, Inc. v. Western, 448 N.E.2d 44, 46–47 (Ind. Ct. App. 1983). Moreover, "absent some other arrangement or policy, when an employer makes an agreement to provide compensation for services, the employee's right to compensation vests when the employee renders the services." Highhouse v. Midwest Orthopedic Inst., P.C., 807 N.E.2d 737, 739 (Ind. 2004); see also Baesler's Super-Valu v. Ind. Comm'r of Labor, 500 N.E.2d 243, 246 (Ind. Ct. App. 1986); Osler Inst., Inc. v. Inglert, 558 N.E.2d 901, 904 (Ind. Ct. App. 1990), summarily aff'd 569 N.E.2d 636 (Ind. 1991).

Thus, the default under Indiana law is that an employee who is promised vacation time by his employer is entitled to use that time or save it for use or payment at a later date. Die & Mold, Inc., 448 N.E.2d at 46–47. This general rule can be abrogated, however, by an arrangement or policy of the employer that either places a prerequisite on an employee's ability to use the promised vacation time or prevents the employee from using the vacation time after a date certain or period of time. Osler, 558 N.E.2d at 904.

As an example, an employer who promises a new employee $40,000 a year and two weeks of vacation may require that employee to work for a specified period of time before actually taking the promised vacation time. Alternatively, the employer could permit the employee to use the vacation time anytime he likes so long as it is used before December 31; otherwise, the vacation time (or the corresponding pay) is forfeited. Either of those scenarios would be permissible "arrangements or policies" under our statutory and case law. If the employee quit before he had worked the requisite amount of time to be able to use his promised vacation days, or if he failed to use the vacation time before the expiry period, his employer would not be required to pay him for the unused time under Indiana's Wage Payment Statute.

The question before us today, then, is whether the union bylaws and constitution are an "arrangement or policy" preventing the disbursement of accrued but unused vacation pay to

5

officers or employees of the Union upon termination. Because the parties are not similarly situated, we will address the merits of their individual claims in turn.

## A. Elected Officers: Stephen Shofstall and Edward Posey

Stephen Shofstall and Edward Posey claim they are employees under Indiana's Wage Payment Statute, Ind. Code § 22-2-5, and there is no policy between them and their employer regarding vacation pay. In the absence of such a policy, they argue they are entitled to compensation for unused vacation days accrued during their employment. In the alternative, they argue the Union's constitution and bylaws do not specifically require vacation days either be used or forfeited, so that time must accumulate. We disagree on both counts.

Section 5.7 of the Union bylaws prescribes the duties and compensation of the Business Manager/Secretary-Treasurer. Pursuant to that section, Shofstall received a certain salary[1] "plus $40 per day per diem (five days a week, 52 weeks a year), plus reasonable expenses . . . [and] two weeks paid vacation per year." Appellee's App. at 18. This is clearly a "policy" regarding compensation, including vacation time, as the term is used in Highhouse, Baesler's Super-Valu, and Osler. Union officials, Union employees, and courts may differ as to what it means, but the only entity with authority to interpret this provision of the governing document is the Union.

Similarly, Section 5.4 of the by-laws prescribes the duties and compensation of a Business Representative. Pursuant to that section, Edward Posey received a salary determined by the Business Manager/Secretary-Treasurer, subject to certain minimum requirements. Additionally, Section 5.4 states that "elected Business Representatives will receive two weeks paid vacation per year and reasonable expenses as determined by the Business

---

[1] This salary was based upon a calculation outlined in Section 213(c) of the Union constitution.

Manager/Secretary-Treasurer." Appellee's App. at 18–19. This, too, is a "policy," and while interpretations may differ as to whether the two weeks of vacation is accrued each year and banked from year to year or is forfeited if not used within a certain time, the only interpretation that matters under our precedent is the Union's.

Thus, because we find the IUPAT constitution and bylaws constitute an "arrangement or policy" regarding vacation time, and because it is the traditional province of voluntary associations to interpret their own constitutions, bylaws, rules, and regulations, we affirm the trial court's orders of summary judgment in favor the Union against the claims of Shofstall and Edward.

### B. Employee: Deborah Posey

But what happens if there is no policy or a dispute regarding the existence of a policy; should unions, and other voluntary associations who hire employees, be held to the same standard as other employers? Or, to frame the question in the context of this case: in the absence of an "arrangement or policy" to the contrary, must a voluntary association comply with Indiana law and the Wage Payment Statute? Today we hold it must.

Deborah claims that, as a Union employee, she earned vacation time each year and any days that went unused were carried over to subsequent years. She argues she is entitled to compensation for those unused days because there was no policy that limited the accrual of vacation time from year to year. While we do not go so far as to say Deborah is entitled to compensation, we agree that there exist issues of material fact that must be resolved and the Union was therefore not entitled to summary judgment on her claim.

Deborah was a member of the Union and worked in her home as a clerical employee. The Union constitution empowers the Business Manager/Secretary-Treasurer to "appoint, discharge and set salaries and expenses for organizers, field representatives, and other staff and

7

direct them in the performance of their duties." Appellee's App. at 18. However, neither the Union's constitution nor its bylaws define the compensation of Union employees like Deborah. It is undisputed that the Union did not have a written vacation policy for employees during the period that Deborah worked there. Thus, to defeat her claim for accrued vacation under the Wage Payment Statute, the Union must show it had an "arrangement or policy" that limited employees' right to accrued vacation. We find the Union did not make a sufficient showing to preclude Deborah's claim.

Upon reviewing the record, there is conflicting evidence as to whether a policy existed and, if it did, what it was.[2] Because we find this disputed issue of material fact, we reverse the trial court's grant of summary judgment for the Union on Deborah's claim.

## Conclusion

The Union bylaws clearly address the compensation, including vacation pay, of its elected officers. They are thus an "arrangement or policy" as we used those terms in Highhouse, and based on our precedent in Givens, the Union is the sole arbiter of disputes arising under its governing documents. The only exception to the deference courts show in these cases is when an association perpetrates fraud or some other illegal act upon the member that abuses or

---

[2] Plaintiffs cite to depositions, affidavits and sworn statements in which the declarants all allege they either had never heard that vacation time for Union employees was "use it or lose it," or they believed the official policy to be that unused vacation was accrued from year to year. Appellant's App. at 132 (deposition of Kevin Popa), 135 (affidavit of Ed Posey), 136–37 (sworn statement of Janet Baker), 138–39 (sworn statement of Gary Lackey), 141 (sworn statement of Jerrell Miskimen), 146 (sworn statement of Mark Sollars), 149 (sworn statement of Jack Young). The Union points to two depositions to show the policy had always been "use it or lose it." Appellee's App. at 21 (deposition of Carolyn Reis), 28–32 (deposition of Johnny Alderman). Additionally, the Union cites several letters from Union elected officials and employees who had been paid for accrued vacation time and then forced to pay it back. Appellee's App. at 36–46. On this record, the nature—even the very existence—of the vacation policy is far from certain.

interferes with that member's civil or property rights. We see no such deprivation in this case, so we affirm the decision of the trial court as to Edward Posey and Stephen Shofstall's claims.

Deborah Posey, as an employee, is entitled to accrue vacation pay unless there was an arrangement or policy to the contrary. Because we find there is an issue of material fact as to whether an arrangement or policy regarding vacation time existed during her employment, we reverse the trial court's grant of summary judgment for the Union against Deborah Posey's claim and remand this case back to the trial court to conduct further proceedings in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

**Dickson, C.J., Rucker, David, and Rush, JJ., concur.**